A02A2380. HOFFMAN v. THE STATE.
(576 SE2d 102)

ELLINGTON, Judge.

A Troup County jury convicted Timothy Hoffman of child molestation, OCGA § 16-6-4. He appeals from the denial of his motion for new trial, challenging the court's admission of several similar transactions, other evidentiary rulings, and the dismissal of a juror for cause. Finding no error, we affirm.

Viewed in a light most favorable to the jury's verdict,[1] the evidence showed that the 13-year-old female victim in this case lived in Troup County with her sister, her father, and his girlfriend. The victim and her family frequently visited a nudist colony in north Geor-

---

* There is nothing in the record to indicate that at the time the accusation initially was filed, the state intended to use it as the basis for a warrant. This Court has recognized that "there is no requirement that a misdemeanor accusation be based on an arrest warrant." *Litz*, supra. In fact, many misdemeanors are prosecuted without the defendant's arrest.

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

gia. During a weekend visit, the victim's father befriended Hoffman, who lived at the colony. The father frequently invited Hoffman to spend the night at the family's home. In September 1999, Hoffman climbed into bed with the victim in the middle of the night and molested her by touching her breasts and genitals. The victim told her mother of the molestation about two weeks later, and the mother suggested that the victim tell her school counselor. The next day, the victim told her middle school counselor that a "family friend" had molested her in her home. The victim specifically named Hoffman as the molester. The counselor reported the incident to the authorities, who conducted a videotaped interview with the victim. The State subsequently charged Hoffman with child molestation.

Prior to trial, the State filed a notice of its intent to present evidence of two similar transactions. The court conducted a similar transaction hearing during which the State showed that, in 1988, Hoffman pled guilty in federal court to ordering and receiving child pornography through the mail. The other transaction occurred in March 2000 at the nudist colony. According to the State, witnesses saw Hoffman grab a young girl and forcefully hold her in his lap as she struggled to get away while they were both naked in a hot tub. Following the hearing, the trial court ruled that the similar transactions were sufficiently linked to the charged crimes and were admissible to show Hoffman's intent and his lustful disposition toward sexual activity involving young children. The trial court gave limiting instructions prior to the introduction of this evidence at trial.

1. On appeal, Hoffman challenges the trial court's admission of the federal conviction as a similar transaction. The contested evidence showed the following: In 1987, Postal Service agents investigated a man suspected of distributing child pornography through the mail. The man's business records showed that, in January 1987, Hoffman had ordered several items from the company costing $500 total. The items included materials entitled *Pre-Teen Nudes Four*, *Nudist Minors*, *Naked as Nature Intended*, and *Pretty Baby*. Based upon this information, Postal Service agents sent Hoffman a questionnaire from a fictitious company asking him to identify the type of pornography in which he was interested. Hoffman responded that he was interested in homemade or professionally made "hardcore" pornographic photos and videos involving, in order of preference, (1) preteen heterosexual sex, (2) teenage heterosexual sex, and (3) adult heterosexual sex. He also indicated that he collected child pornography. Upon receiving this information, the Postal Service sent Hoffman a sales catalog from another fictitious company which claimed to specialize in child pornography. Hoffman ordered two videotapes, entitled *Pre-Teen Trio* and *Little Ones in Love*, and two magazines, *Torrid Tots* and *Lolita Sex*, from the catalog and paid for them with

his personal check. After the Postal Service conducted a controlled delivery of the materials to Hoffman, officers executed a search warrant of his home. Following his arrest, Hoffman pled guilty to receiving child pornography through the mail. See 18 USCA § 2252 (a) (2).

> While evidence of prior crimes committed by a defendant is generally inadmissible, such evidence may be admitted for limited purposes, such as showing identity, plan, scheme, state of mind, and course of conduct. In order for the court to admit evidence of a prior crime, the state must make the following three affirmative showings: (1) that the state intends to introduce evidence of the independent offense for an appropriate purpose; (2) that there is sufficient evidence to establish that the defendant committed the independent offense; and (3) that there is a sufficient similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.

(Footnotes omitted.) *Turner v. State*, 245 Ga. App. 476, 478 (2) (538 SE2d 125) (2000). There is no requirement that the prior transaction be absolutely identical to the crime charged, as long as there is some logical connection between the independent act and the crime charged so that proof of the former tends to prove the latter. *Hudson v. State*, 271 Ga. 477, 479 (2) (521 SE2d 810) (1999); *Touchton v. State*, 210 Ga. App. 700, 701 (2) (437 SE2d 370) (1993). See also *Adams v. State*, 208 Ga. App. 29, 32 (2) (b) (430 SE2d 35) (1993) (the prior sexual abuse of children, regardless of their gender or the specific acts perpetrated against them, is sufficiently similar to be admissible in a child molestation trial). This rule allowing the admissibility of similar transactions is most liberally extended in the area of sexual offenses, particularly sexual offenses against children. *Stine v. State*, 199 Ga. App. 898, 899 (2) (406 SE2d 292) (1991). In fact, "it is a well-established rule that when a defendant is charged with any form of sexual abuse of a child, evidence of prior sex crimes against children is admissible, because such conduct requires a unique bent of mind." (Footnote omitted.) *Turner v. State*, 245 Ga. App. at 479 (2). Evidence that the defendant possessed illegal sexual paraphernalia would be admissible if the paraphernalia showed "[a] defendant's lustful disposition toward the sexual activity with which he is charged or his bent of mind to engage in that activity." *Simpson v. State*, 271 Ga. 772, 774 (1) (523 SE2d 320) (1999). See also *Touchton v. State*, 210 Ga. App. at 701 (2) (prior conviction for possessing child pornography admissible in child molestation case because it showed "behavior on the [defendant's] part that was strikingly similar to the acts for which he was on trial"). Cf. *Frazier v.*

*State*, 241 Ga. App. 125, 126 (1) (524 SE2d 768) (1999) (materials evidencing a general interest in sexual conduct between adults was not admissible in a child molestation case).

Hoffman argues that the pornographic material that served as the basis of Hoffman's prior conviction was not similar to the crimes for which he was charged because the materials depicted explicit sexual activity *between children*, not between an adult and child. We find, however, that it evidenced Hoffman's unique bent of mind favoring sexual conduct with children and that it was logically connected to the crimes for which Hoffman was charged. *Touchton v. State*, 210 Ga. App. at 701 (2). Accordingly, the trial court did not abuse its discretion in admitting Hoffman's federal conviction as a similar transaction.

2. Hoffman also contends the trial court improperly allowed the State to present evidence that Hoffman purchased mail order pornographic materials in January 1987, before the reverse sting operation. The transcript of the pre-trial similar transaction hearing shows that when the State presented evidence of a series of events which led to Hoffman's 1988 federal conviction, it included evidence of Hoffman's January 1987 purchase of mail order pornographic material. The Postal Service's discovery of Hoffman's name in the company's records led to its investigation of Hoffman. At the motion hearing, the State also presented a Postal Service memo which detailed Hoffman's January 1987 purchase and other events leading to the reverse sting operation and Hoffman's conviction.

The trial court ruled that the January 1987 purchase caused the Postal Service to initiate its investigation and that it was part of the res gestae of the federal crime similar transaction. We agree and find that it was admissible as res gestae evidence. *Touchton v. State*, 210 Ga. App. at 702 (3). Further, because it was part of the res gestae of the federal crime for which the State provided notice under Uniform Superior Court Rule 31.3, no separate notice was required. The trial court did not abuse its discretion in allowing the State to present evidence about Hoffman's January 1987 purchase of illegal child pornography. Id.

3. Hoffman challenges the admission of the catalog descriptions of the videotapes and other materials he ordered from the Postal Service's fictitious company, the Far East Trading Company, contending the descriptions of these materials were unnecessarily inflammatory and prejudicial. The record shows, however, that Hoffman failed to object to the catalog descriptions at trial. Hoffman's generic continuing objection to the admissibility of the similar transactions was not sufficient to preserve this alleged error. Accordingly, this argument is waived. See *Newman v. State*, 233 Ga. App. 794, 795 (2) (504 SE2d 476) (1998).

4. Hoffman contends the March 2000 hot tub incident at the nudist colony was not similar enough to the charged offenses to warrant admission as a similar transaction. We disagree.

At trial, a witness testified that he saw Hoffman, who was nude, suddenly grab an 11-year-old naked girl while they were all lounging in the hot tub. According to the witness, Hoffman "restrained" the girl and held her on his lap as she struggled "like crazy" to get away. When the girl managed to get free, Hoffman grabbed her again and pulled her onto his lap. Then he started "wiggling around with this look on his face like such gratitude." He released the child only after her father walked into the room. The witness reported the incident to the colony's owners, and Hoffman was suspended from the colony the next day.

We find that the incident was sufficiently similar and linked to the crimes charged to be admissible as a similar transaction. See *Adams v. State*, 208 Ga. App. at 32-33 (2) (b); *Rodgers v. State*, 261 Ga. 33, 35 (3) (401 SE2d 735) (1991).

5. Hoffman challenges the trial court's decision to excuse a juror for cause after finding that he was being evasive and due to his "unwillingness to forthrightly answer the questions put to him." During voir dire, the juror stated that he would have trouble being fair and impartial in this case and that he did not like to "run around pointing fingers" at people for doing something wrong. He expressed particular concern about the fact that the victim's parents had taken the child to a nudist colony and that they had actually introduced her to Hoffman, and the juror indicated that this might make him "lean" toward the defendant's innocence. Hoffman contends the juror was not trying to evade the court's questions, but that the juror was just "confused" by the State's questions.

"Whether to strike a juror for cause is within the sound discretion of the trial court. And inasmuch as the trial court's conclusion on bias is based on findings of demeanor and credibility, which are peculiarly within the trial court's province, those findings are to be given deference." (Citations omitted.) *Wolfe v. State*, 273 Ga. 670, 672 (2) (544 SE2d 148) (2001). Having reviewed the dialogue at issue, we find that the trial court did not abuse its discretion in excusing the juror for cause. See id.

6. Hoffman contends the trial court improperly prevented him from cross-examining the victim's school counselor about her knowledge of unrelated counseling the victim received prior to the molestation. This alleged counseling took place at a different counseling center with a different counselor. After reviewing in camera the evi-

dence concerning the counseling,[2] the trial court ruled that the evidence was irrelevant to the issues at trial.

The trial court has the discretion to limit the scope of cross-examination at trial and to exclude irrelevant evidence. *Parrish v. State*, 237 Ga. App. 274, 281-282 (6) (514 SE2d 458) (1999). "The right to a thorough and sifting cross-examination is not abridged when the trial judge limits it to relevant matters." (Citation and punctuation omitted.) Id. We find no abuse of discretion here.

7. Hoffman's final enumeration involves the trial court's refusal to allow him to elicit evidence of the victim's parents' personal sexual history. Hoffman has failed to cite to any authority in his brief that would support his contention that this evidence should have been admissible. Accordingly, this enumeration is deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Smith, C. J., and Eldridge, J., concur.*

DECIDED JANUARY 9, 2003 — 

*Ellis C. Smith, Ricardo G. Samper*, for appellant.
*Peter J. Skandalakis, District Attorney, Nigel R. Lush, Assistant District Attorney*, for appellee.

---

[2] The evidence was not included in the record on appeal.